#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| GEORGE NICHOLAOU,<br><br>　　　　　　　Plaintiff,<br>v.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　　　　Defendant. | **ORDER GRANTING [36] MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 1:18-cv-00072-CMR<br><br>Magistrate Judge Cecilia M. Romero |

Before the court is Defendant United States of America's (Government or Defendant) Motion for Summary Judgment (Motion) (ECF 36) before the undersigned by the consent of the parties pursuant to 28 U.S.C. § 636(c) (ECF 11). Pursuant to Rule 7-1(f) of the Rules of Practice for the United States District Court for the District of Utah (Local Rules), the court concludes that oral argument is not necessary and will determine the pending Motion based on the written memoranda. For the reasons discussed herein, the court GRANTS the Motion.

### I.　　PROCEDURAL BACKGROUND

Plaintiff George Nicholaou (Plaintiff or Mr. Nicholaou), a former employee of the Government's contractor STS Systems Integration (SSI) filed his original complaint (Complaint) against Defendant Chalon Keller (Keller) in Utah State Court Second Judicial District (ECF 5-1). Plaintiff's Complaint alleges that Keller, then an Air Force Civilian employee, improperly interfered with Plaintiff's employment relationship resulting in Plaintiff's termination (ECF 5-1). The Government filed a Notice of Removal asserting that Keller was acting within the scope of her employment at the time of the events on which Plaintiff's claims are based (ECF 2). The Government then certified—through the United States Attorney—that Keller was acting within the scope of her employment (ECF 2 at Ex. B), and invoked the Federal Torts Claims Act

(FTCA) (ECF 23 at 8-9). Upon this certification, the FTCA provides that the government is substituted as the defendant and the case is removed to federal court. 28 U.S.C. §1346(b)(1). Thereafter, the Government filed a Motion to Dismiss asserting sovereign immunity against any claim for any interference-with-employment (ECF 22, 23). The court held a hearing on Defendant's Motion to Dismiss and determined that it was appropriate to convert the Motion to Dismiss to a Rule 56 motion for summary judgment and, at the Plaintiff's request, invited the parties to submit a motion for summary judgment and response that complied with Local Rule 56-1 (ECF 34, 35).

On September 15, 2020, Defendant filed the pending Motion (ECF 36) asserting Defendant was entitled to summary judgment because: (1) the undisputed material facts establish that Keller was acting within the scope of her employment at all relevant times and thus this case can proceed only against the Government under the FTCA and; (2) the court lacks subject-matter jurisdiction over Plaintiff's claim because the FTCA does not waive the United States' sovereign immunity from Plaintiff's interference-with-employment claim. Plaintiff disputes these claims (ECF 41).

## II.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine when "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). In determining whether there is a genuine dispute as to material fact, the court should "view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant." *Id*. Defendant bears the initial burden of showing an absence of evidence to

support Plaintiff's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex*, 477 U.S. at 325).

### III.   UNDISPUTED MATERIAL FACTS[1]

The following material facts are uncontroverted, or, where disputed, viewed in the light most favorable to Plaintiff, the nonmoving party:

From 2012 until April 23, 2014, Plaintiff was employed by military contractor SSI as an F-16 Aircraft Configuration Manger at SSI's Hill Air Force Base Government Contracting Office. During this period, Steve Doneghy (Doneghy) was employed by SSI as general manager and had supervisory authority over Plaintiff. SSI and Doneghy's point of contact at Hill Air Force Base was Government Contracting Office Representative Clayton Archuleta (Archuleta). During the relevant period, Keller was employed as the Deputy Director/Acting Chief of the Hill Air Force Base International Branch and Plaintiff was a member of one of the teams Keller supervised. Keller's job responsibilities included protecting and preserving Air Force property and personnel, reporting suspected abuse of personnel, and generally reporting other security concerns to the proper authorities (ECF 36 at Ex. H).

On March 1, 2013, during his employment with SSI, Plaintiff had a conversation with Hill Air Force Base International Branch employee Cathy Hansing (Hansing) who had recently been selected to fill a position as the Greece Program Manager with the Air Force. Hansing was selected to replace the incumbent supervisor over the group of Air Force personnel that Plaintiff

---

[1] When not directly cited, the court's undisputed facts are drawn from the Motion (ECF 36), Plaintiff's Opposition to Motion for Summary Judgement (ECF 41) and Defendant's Reply Memorandum (ECF 44). The parties' briefing included several additional undisputed facts that the court has concluded are not material to resolution of the Motion and are therefore not referenced herein.

worked with. During the conversation, Plaintiff expressed to Hansing, with some visible emotion, that he believed her predecessor had been subject to unfair and inaccurate criticisms by senior management. A few days later, Plaintiff was informed that Hansing had felt intimidated by the March 1, 2013, conversation with Plaintiff. Plaintiff was reprimanded and instructed by Doneghy to apologize to Hansing.[2]

On April 17, 2014, Plaintiff had an encounter with a Hill Air Force Base employee, Martin Peters (Peters) while the two were driving into work (Parking Lot Encounter). Plaintiff accused Peters of running him off the road and confronted him in a verbal altercation outside of their respective office buildings where Plaintiff shouted his anger with use of profanities and expletives about the way Peters drove. The Parking Lot Encounter concluded with both Peters and Plaintiff walking into their respective office buildings.

Peters did not report the Parking Lot Encounter to any supervisor or security personnel. Plaintiff reported the Parking Lot Encounter to Section Chief Russell Oster and to the Motorcycle Safety Manager on the base. The Motorcycle Safety Manager reported the Parking Lot Encounter to a supervisor, who then reported the Parking Lot Encounter to Jimi Pascow (Pascow) (ECF 36, Ex. G at 24:11-15).

Later in a staff meeting in which Keller, Peters, Pascow, and others were present, Pascow referred to the Parking Lot Encounter. (ECF 36, Ex. G at 24:15-17). Colonel Mark Mol (Colonel Mol), the senior official at the staff meeting, asked what happened and Peters reported his version of the Parking Lot Encounter. (ECF 36, Ex. G at 24:23-25:18). Colonel Mol then asked Christy Smittle (Smittle), Chief of the F-16 Government Contracting Branch, to investigate the matter and "take care of it." (ECF 36 at Ex. 26:11-14).

---

[2] This event is hereafter referred to as the March 2013 Hansing Encounter.

Keller became aware of Plaintiff's report regarding the Parking Lot Encounter. Thereafter, either later on April 17 or on April 18, Keller informed Peters he should prepare a statement of the Parking Lot Encounter. Although Keller did not supervise personnel in Peters' organization, she informed Peters that he should write a report to protect himself (ECF 36, Ex. F at 10:15-11:20). Peters thereafter prepared a written statement dated April 18, 2014. At Smittle's request, on April 21, 2014, Keller forwarded Peters' statement regarding the Parking Lot Encounter to Smittle, Archuleta's Supervisor. In the transmittal email, Keller noted that she was "concerned about [Plaintiff's] temper" and that Plaintiff had previously exhibited "hostile and inappropriate" behavior in the workplace—referring to the March 2013 Hansing Encounter (ECF 41, Ex. 16; ECF 36, Ex. G at 33:4-15). Smittle forwarded Keller's email with Peters' statement to Archuleta.

After reviewing Peters' statement, on April 21, 2014, Archuleta sent an email to Doneghy stating that Plaintiff "took an aggressive and extremely unprofessional approach to handling" the Parking Lot Encounter and consequently several individuals did not feel comfortable around him (ECF 36, Ex. J). Archuleta's email also specifically requested "that SSI consider removing Mr. Nicholau from the subject contract." (*Id*.). Doneghy considered the information Archuleta provided and spoke with Plaintiff about the Parking Lot Encounter. Doneghy determined that Plaintiff could not continue in his assignment at Hill Air Force Base based on his behavior and that Plaintiff let his temper "get out of control." (ECF 36, Ex. B at 51--53). The following day Dongehy notified Plaintiff that his employment with SSI was terminated. On April 23, 2014, Plaintiff received a termination letter from SSI which indicated his dismissal was at the request of the Government Contracting Office based on threats Plaintiff made to an Airforce employee.

5

## IV.     DISCUSSION

**A. The Undisputed Facts show Keller was acting within the scope of her employment.**

The Government argues that Plaintiff's claim against Keller was appropriately certified to proceed under the FTCA with the Government substituted as the defendant because Keller was acting within the scope of her federal employment in learning of the Parking Lot Encounter during the staff meeting, advising Peters to prepare a statement regarding the incident, and responding to Smittle's request for information about Plaintiff.  Plaintiff contends that Keller's conversation with Peters regarding the Parking Lot Encounter creates a reasonable inference that her personal animus toward Plaintiff caused her to act outside her scope of employment to cause Plaintiff's employment termination and her motivations were not intended to advance the best interests of the Air Force.

The Government's certification is prima facie evidence that the employee was acting within the scope of his or her employment. *Richman v Straley*, 48 F.3d 1139, 1145 (10th Cir. 1995).  Once this certification is made, the plaintiff then carries the burden of demonstrating that the federal employee was not acing within the scope of employment. *Id*.  When a plaintiff challenges the Government's certification, a federal employee's scope of employment is determined by reference to the law of the state where the events alleged in the complaint occurred. *Id*.  Here, the events alleged in the Complaint occurred on Hill Air Force Base in Utah and therefore Utah law applies.

Under Utah law, in determining whether an employee's conduct is within the scope of his or her employment the court should consider: (1) whether the employee's conduct is of the general kind she is employed to perform; (2) whether the conduct in question occurred during

6

normal work hours and in the ordinary work location;[3] and (3) whether the employee's conduct was motivated by an intent to further the employer's interest. *Brinker v. Salt Lake Cnt'y*, 771 P.2d 1053, 1056-67 (Utah 1989). As outlined below, Plaintiff has failed to demonstrate Keller's actions do not comport with these factors.

### 1. Keller's conduct was of the general kind she was employed to perform.

Defendant contends Keller's involvement in the circumstances surrounding Plaintiff's termination was limited to: (1) being informed of the Parking Lot Encounter; (2) requesting a statement from Peters of his recollection of the Parking Lot Encounter; and (3) forwarding Peters' statement regarding the Parking Lot Encounter to Smittle noting that Plaintiff had previously exhibited "hostile and inappropriate" behavior in the workplace (ECF 36). Plaintiff does not dispute these facts and does not argue Keller's actions were not the type she was employed to perform. Rather, Plaintiff argues Keller's actions were based on her own personal animus against Plaintiff and therefore not within the scope of her employment. At all relevant times, Keller was employed as the Deputy Director/Acting Chief of the Hill Air Force Base International Branch and was charged with ensuring the organization's mission is fulfilled in a timely and efficient manner (ECF 36, Ex. H). The undisputed material facts demonstrate, and Plaintiff did not contest, that Keller's actions—requesting a statement regarding an incident on the premises from an employee and forwarding that statement to another supervisor—were of the general kind a supervisor is employed to perform. The undisputed facts therefore demonstrate

---

[3] Neither party argues Keller's alleged wrongful conduct occurred outside of regular working hours, and it is not disputed that the alleged conduct occurred at Hill Air Force Base. Notwithstanding, the Utah Supreme Court has held an agent need not be acting "within the hours of the employee's work and the ordinary spatial boundaries of the employment" in order to be acting within the course of his employment. *M.J. v. Wisan*, 371 P.3d 21, 32 (Utah 2016) (citing *Brinker*, 771 P.2d at 1057). The court will therefore not make a determination as to the second factor.

that Keller's conduct was within the scope of her employment in ensuring appropriate workplace behavior and therefore supports the United States' certification under the FTCA.

> **2. Plaintiff has failed to show Keller's conduct was motivated by a personal animus and not an intent to further her employer's interest.**

Plaintiff contends that Keller's conduct was based on a personal animus toward Plaintiff, and she therefore orchestrated Plaintiff's termination. Plaintiff claims Keller's actions were not motivated by an intent to further the interest of the Air Force and that she was therefore acting outside the scope of her employment (ECF 41). Plaintiff argues that under the Supreme Court's reasoning in *Staub v. Proctor Hospital*, there is a triable issue of material fact as to whether Keller's actions were intended to cause an adverse employment action and were the proximate cause of Plaintiff's termination. *See* 562 U.S. 411 (2011) (holding that if supervisor performs an act motivated by antimilitary animus that is intended to cause adverse employment action, and if that act is proximate cause of ultimate employment action, then employer is liable under the Uniformed Services Employment and Reemployment Rights Act (USERRA), notwithstanding that the supervisor did not make the ultimate employment decision). Plaintiff's reliance on the *Staub* case is misplaced. First, *Staub* is factually and procedurally different than the present matter. In *Staub*, the plaintiff filed a claim against a private employer for discrimination under USERRA. *Id*. Unlike in *Staub*, the relevant inquiry here is whether the United States has been properly substituted as defendant under the FTCA—not whether the United States, as Keller's employer, may be liable under USERRA. Second, even assuming it were appropriate to look to the analysis of *Staub* under the facts of this case, Plaintiff has failed to demonstrate an issue of fact that Keller's acts were motivated by a personal animus or intended to cause adverse employment action that was the proximate cause of Plaintiff's termination.

In challenging the Government's certification under the FTCA, Plaintiff must demonstrate a genuine issue of material fact showing Keller was not acting with an intent to further her employer's interest. Under Utah law, Plaintiff can demonstrate this by showing "the employee acts 'from purely personal motives ... in no way connected with the employer's interests' or if the conduct is 'unprovoked, highly unusual, and quite outrageous.'" *Jensen v. Xlear, Inc.*, No. 2:19-CV-413, 2020 WL 2431239, at *4 (D. Utah May 12, 2020) (quoting *Birkner*, 771 P.2d at 1057). Plaintiff has failed to do so.

Keller's involvement following the Parking Lot Encounter was not only limited, but appropriate. Upon learning of the Parking Lot Encounter which involved Plaintiff (a member of one of the teams Keller supervised) and Peters, Keller informed Peters he should write a statement then forwarded it onto to Smittle, who Colonel Mol had tasked with dealing with the matter. Keller's limited involvement in the investigation into the Parking Lot Encounter and her email to Smittle are not highly unusual or outrageous. Rather, Keller was furthering the interests of the Air Force by fulfilling her supervisory role of investigating possible abuse and security concerns.

Plaintiff's argument that Keller embellished Plaintiff's history of workplace conduct is also not supported by the record. First, Keller did not put in motion the investigation, Colonel Mol made that decision. Second, it is undisputed that when Keller sent Smittle the email transmitting Peters' statement, she was referring to the March 2013 Hansing Encounter. Keller did not misreport the March 2013 Hansing Encounter.

Finally, the record does not support that Keller terminated Plaintiff or that her involvement put into motion Plaintiff's termination. It is undisputed that Doneghy made the decision to terminate Plaintiff based on Plaintiff's behavior and temper. Dongehy's point of

contact with Hill Air Force Base was Archuleta, not Keller. Archuleta independently referred to Plaintiff's temper and prior "hostile and inappropriate workplace behavior" in his email to Doneghy. Accordingly, the undisputed material facts do not support Plaintiff's arguments that Keller's actions were the proximate cause of his termination, but rather, show that Keller was motivated by an intent to further her employer's interest.

In sum, Plaintiff has failed to meet his burden of showing a genuine dispute of fact as to whether Keller's actions were within the scope of her employment. The Government is therefore entitled to judgment as a matter of law on Plaintiff's challenge to the United States' certification and substitution as defendant under the FTCA.

**B. The Government has not waived its sovereign immunity as to Plaintiff's claims.**

The United States, as sovereign, is immune from suit except to the extent it has waived its immunity. *Garling v. United States Environmental Protection Agency*, 849 F.3d 1289, 1294 (10th Cir. 2017) (citing *United States v. Orleans*, 425 U.S. 807, 814 (1976)). The FTCA is a limited waiver of sovereign immunity, making the Federal Government liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment. *Id*. However, one exception to the FTCA waiver is when a claim arises out of an interference with contract rights. 28 U.S.C. § 2680(h). Courts in the Tenth Circuit have regularly held that allegations of interference with current or perspective employment relations fall within this exception to the FTCA waiver. *See, e.g. Aviles v. Lutz*, 887 F.2d 1046, 1049 (10th Cir. 1989). In the absence of a waiver, the court lacks jurisdiction over a matter. *Id*.

Here, Plaintiff's Complaint alleges his employment as a federal contractor was terminated due to Keller's actions (ECF 5-1). Specifically, Plaintiff alleges Keller intentionally interfered with his employment relationship with SSI and prospective employment opportunities

with other military contractors (ECF 5-1 at ¶ 34). These allegations fall within the FTCA's waiver exclusion of claims for "interference of contract rights." *Id*. (holding plaintiff's allegation that government attorneys interfered with his right to contract for government employment falls within the exceptions to the FTCA waiver under 28 U.S.C. § 2680(h)). Plaintiff's single cause of action is not one for which the United States has waived its sovereign immunity and therefore, the court lacks jurisdiction over Plaintiff's claims and summary judgment in favor of the Government is warranted.

## ORDER

For the foregoing reasons, Defendant's Motion for Summary Judgement (ECF 36) is GRANTED. Plaintiff's Complaint is hereby dismissed with prejudice.

IT IS SO ORDERED.

DATED this 13 September 2021.

Magistrate Judge Cecilia M. Romero
United States District Court for the District of Utah